UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
DEVELOPMENT SPECIALISTS, INC., :
as Plan Administrator of
Coudert Brothers LLP, : 09 Civ. 4084 (BSJ)

                              Plaintiff, :

  - against - :

WEISER REALTY ADVISORS LLC, :
GERALD R. SANDERS, and
JOHN W. HOUCK, :

                        Defendants. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

SMITH, GAMBRELL & RUSSELL, LLP
250 Park Avenue, Suite 1900
New York, New York 10177
Tel: (212) 907-9700
Fax: (212) 907-9800
*Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

    I.    Standard for Motion for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . .  3

    II.    The Motion for Summary Judgment Should Be Denied Because
           Defendants Attack A Cause of Action That Has Not Been Averred
           By The Plan Administrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

    III.    Defendants' Motion for Summary Judgment Should Be Denied Because
           Professional Malpractice Is Not A Recognized Claim Against Appraisers . . . . . . . .  5

    IV.    The Examiner's Reports Should Not Be Considered In Determining
           Defendants' Motion for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

# TABLE OF AUTHORITIES

**Cases**  **Pages**

*Allen Homes, Inc. v. Williams,*
    2006 WL 5110576 (N.Y. Sup. Ct. Monroe Cnty. Apr. 25, 2006) . . . . . . . . . . . . . . . . . . .   7

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

*Azrielli v. Cohen Law Offices,*
    21 F.3d 512 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3, 9

*Bombardier Capital, Inc. v. Naske Air GMBH,*
    2003 WL 22137989 (S.D.N.Y. Sept. 17, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

*Brothers v. Florence,*
    95 N.Y.2d 290, 739 N.E.2d 733, 716 N.Y.S.2d 367 (2000) . . . . . . . . . . . . . . . . . . . . .   7

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

*Chase Scientific Research, Inc. v. NIA Group, Inc.,*
    96 N.Y.2d 20, 749 N.E.2d 161, 725 N.Y.S.2d 592 (2001) . . . . . . . . . . . . . . . . . . . . .   6, 7, 8

*Early v. Rossback,* N.Y. L.J., Mar. 11, 2004, at 21 (col. 3)
    (N.Y. Sup. Ct. Nassau Cnty. Mar. 1, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7, 8

*Georgetti v. United Hosp. Med. Ctr.,* 204 A.D.2d 271,
    611 N.Y.S.2d 583 (2d Dept 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

*Hydro Investors, Inc. v. Trafalgar Power Inc.,* 227 F.3d 8 (2d Cir. 2000) . . . . . . . . . . . . .   4

*Struna v. Wolf,*
    126 Misc. 2d 1031, 484 N.Y.S. 2d 392 (N.Y. Cnty Sup. Ct. 1985) . . . . . . . . . . . . . . .   4

**Rules**

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

Fed. R. Civ. P. 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

CPLR 214(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5, 6, 7

**Other Authorities**

10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane,
    *Federal Practice and Procedure* § 2721 (3d ed. 1998) . . . . . . . . . . . . . . . . . . . . . . . .   3

Plaintiff Development Specialists, Inc., in its capacity as Plan Administrator for Coudert Brothers LLP (the "Plan Administrator"), respectfully submits this memorandum of law in opposition to the motion for summary judgment filed by Defendants Weiser Realty Advisors LLC ("Weiser"), Gerald R. Sanders ("Sanders"), and John W. Houck ("Houck").

## PRELIMINARY STATEMENT

Defendants' motion for summary judgment is based entirely on the mistaken premise that the Amended Complaint asserts a claim of professional negligence or professional malpractice. The Plan Administrator, however, has not averred such a claim because New York law does not recognize malpractice claims against real estate appraisers. The Amended Complaint's sole claim is for negligent appraisal. As such, the motion fails as a matter of law. Also, Defendants have not demonstrated the absence of a genuine issue of material fact.

## STATEMENT OF FACTS[1]

Coudert was an international law firm organized as a New York limited liability partnership as of October 1, 2001. (Declaration of Charles B. Keefe ("Keefe Decl."), executed on April 25, 2011, ¶ 2.) In 2004, Coudert experienced a decline in profits per partner that threatened the firm's existence. (*Id.* ¶ 3.) As a result, Coudert's partnership elected a new Executive Board in February, 2005. (*Id.* ¶ 4.) In or prior to May 2005, Coudert initiated discussions with Baker & McKenzie, LLP, regarding a firm-wide merger. (*Id.* ¶ 5.) On May 18, 2005, partners resident in Coudert's London and Moscow Offices announced their intention to withdraw and join Orrick Herrington & Sutcliffe LLP, causing Coudert to be in default on its

---

[1] Terms defined in Plaintiff's Response to Defendants' Rule 56.1 Statement of Uncontested Material Facts ("Pl.'s 56.1 Resp.") are used herein without further definition or explanation.

loans. (*Id.* ¶ 6.) On August 16, 2005, Coudert's equity partners voted to wind down Coudert as Baker & McKenzie had rejected the idea of a firm-wide merger. (*Id.* ¶ 8.)

Coudert retained Defendants a day or so later. (Keefe Decl., ¶ 9.) On August 19, 2005, Defendants, with knowledge that Coudert was considering a transaction with Baker involving the New York office, issued the Complete Appraisal in a Self-Contained Report of the Leasehold Estate Held by Coudert Brothers LLP (the "Weiser Report"). Two days after being hired, Defendants concluded that the value of the Leasehold Estate as of September 1, 2005, was $18,000,000. (*Id.* ¶ 9; Defs. Ex. C.)[2]

Relying on that valuation, Coudert negotiated with Baker and the Landlord with regards to the Leasehold Estate as part of the overall transaction of Coudert and Baker. Under the terms of the lease with the Landlord, the Landlord would be entitled to half of the consideration received from the assignee of the Leasehold Estate. (Pl.'s Rule 56.1 Resp. ¶ 16.) Subsequently, relying on the value provided by Defendants, Coudert agreed to accept approximately $8 million in exchange for the Leasehold Estate.

On September 22, 2006, Coudert filed in this Court a voluntary petition for relief under the Bankruptcy Code. (Compl. ¶ 1, Ans. ¶ 1.)

The actual value of the Leasehold Estate was at least $18 million greater than the valuation provided by Defendants. (Defs. Exs. F-G.) The Weiser Report was incorrect and Defendants undervalued the Leasehold Estate. (Defs. Exs. F-G.) The Plan Administrator's expert, Kahn Hoffman, opined that Defendants failed to capitalize the value of the discounted cash flow and made errors in certain assumptions, resulting in an appraisal of $18 million, instead of $36 million to $39 million. (Defs. Exs. F-G.) Had Coudert been aware of that

accurate, higher value of the Leasehold Estate, it would have negotiated a significantly greater amount of consideration than $8 million. Therefore, Defendants commenced an action for negligent appraisal. (Compl. ¶¶ 71-85.)

## ARGUMENT

### I. Standard for Motion for Summary Judgment

Summary judgment is appropriate only when the moving party demonstrates that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a summary judgment motion, the court may rely only on "material that would be admissible or usable at trial." *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 517 (2d Cir. 1994); *see also* 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2721 at 361 (3d ed. 1998). The court must resolve all ambiguities and draw all justifiable factual inferences in favor of the party against whom summary judgment is sought. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Any assessments of credibility and all choices between available inferences" are left to the fact finder and not appropriate for summary judgment. *Azrielli*, 21 F.3d at 517 (citations omitted). The moving party bears the initial burden of showing that no genuine issue of fact exists. *Celotex*, 477 U.S. at 323. Only if such a showing is made, must the opposing party present "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e).

---

[2] Exhibits attached to the Declaration of William J. Kelly in support of Defendants' motion for summary judgment will be referred to as "Defs. Ex."

3

## II. The Motion For Summary Judgment Should Be Denied Because Defendants Attack A Cause of Action That Has Not Been Averred By The Plan Administrator.

The Plan Administrator has sued Defendants for negligent appraisal only. (Compl. ¶¶ 71-85.) Defendants move for summary judgment against a claim for professional negligence or malpractice. The Plan Administrator, however, has not averred such a claim.

Professional negligence or malpractice is a different claim with different elements of proof from a negligent appraisal claim. Under New York law, "[a] claim for negligent appraisal is in essence a claim for negligent [mis]representation." *Struna v. Wolf*, 126 Misc. 2d 1031, 1034, 484 N.Y.S. 2d 392, 395 (N.Y. Cnty Sup. Ct. 1985). The elements of proof are:

> (1) the defendant had a duty, as a result of a special relationship, to give correct information;
>
> (2) the defendant made a false representation that he or she should have known was incorrect;
>
> (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose;
>
> (4) the plaintiff intended to rely and act upon it; and
>
> (5) the plaintiff reasonably relied on it to her detriment.

*Bombardier Capital, Inc. v. Naske Air GMBH*, 02 Civ. 10176 (DLC), 2003 WL 22137989, at *4 (S.D.N.Y. Sept. 17, 2003); *see also Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000). For a professional negligence or malpractice claim, the elements are:

> (1) departure from accepted standards of practice and
>
> (2) departure was proximate cause of injury.

*See Georgetti v. United Hosp. Med. Ctr.*, 204 A.D.2d 271, 611 N.Y.S.2d 583 (2d Dept 1994).

Defendants' motion to dismiss cited *Struna* (and other negligent appraisal cases) and argued that the complaint lacked sufficient allegations for a negligent appraisal claim. (*See* Declaration of John G. McCarthy ("McCarthy Decl."), executed on April 25, 2011, Ex. 4.) After hearing Defendants' oral argument on that motion, Bankruptcy Judge Drain noted in his oral

4

decision, "I have before me a motion under Federal Rule 12(b)(6) to dismiss this adversary proceeding which is a proceeding asserting a claim for an allegedly negligent appraisal." (*See id.*, Ex. 5, at 8.) In connection with that motion, Defendants made no references to a professional malpractice claim in this matter. They sought dismissal of the Plan Administrator's negligent appraisal claim.

Defendants now argue that "Plaintiff offers absolutely no evidence to support the allegation that Weiser departed from the accepted standards of practice in preparing its Appraisal Report." (Defs. Mem. at 16.) Defendants miss the mark. As discussed above, the Plan Administrator is not required to prove professional standards of real estate appraisers and departure from those professional standards in a negligent appraisal action. None of the elements of a claim for negligent appraisal requires such proof. Therefore, Defendants have not demonstrated that they are entitled to judgment as a matter of law and this motion should be denied.

### III. Defendants' Motion For Summary Judgment Should Be Denied Because Professional Malpractice Is Not A Recognized Claim Against Appraisers.

Defendants' entire summary judgment motion is based upon the contention that the Plan Administrator asserts a claim for professional malpractice. No New York court, however, has addressed the issue and held that a professional malpractice claim can be brought against appraisers. Defendants base their entire motion on the contention that the Plan Administrator has failed to meet the elements of a non-existent cause of action.

New York has a specific statute of limitations for non-medical malpractice claims: "[t]he following actions must be commenced with three years . . . an action to recover damages for malpractice, other than medical, dental or podiatric malpractice, regardless of whether the underlying theory is in contract or tort." CPLR 214(6). The New York Court of Appeals has

5

held that this statute of limitations applies to malpractice claims against non-medical "professionals." *Chase Scientific Research, Inc. v. NIA Group, Inc.*, 96 N.Y.2d 20, 29, 749 N.E.2d 161, 166, 725 N.Y.S.2d 592, 597 (2001). A "professional" is one who has qualities that include "extensive formal learning and training, licensure and regulation indicating a qualification to practice, a code of conduct imposing standards beyond those accepted in the marketplace and a system of discipline for violation of those standards . . . Additionally, a professional relationship is one of trust and confidence, carrying with it a duty to counsel and advise clients." *Id.* The Court of Appeals held that insurance brokers did not fall within the scope of CPLR 214(6) because, though they have certain licensing requirements, the educational and training prerequisites are not rigorous like those for attorneys, engineers, architects, or accountants. *Id.* at 30, 749 N.E.2d at 167, 725 N.Y.S.2d at 598. Additionally, insurance brokers are not governed by a code of conduct and subject to a system of discipline for violations of such a code. *Id.* Insurance brokers also lack a duty to advise their clients in a relationship of trust and confidence. *Id.* Therefore, the Court held that the limitations period in CPLR 214(6) did not apply in actions against insurance brokers. *Id.* at 30-1, 749 N.E.2d at 598, 725 N.Y.S.2d at 598.

Using the analysis of *Chase Scientific*, real estate appraisers are not "professionals" and thus no claims for malpractice can exist against them. Real estate appraisers' educational and training requirements are not nearly as rigorous as attorneys, engineers, architects, or accountants. Real estate appraisers are not governed by a code of conduct and subject to a system of discipline for violations of such a code. In addition, real estate appraisers lack a duty to advise their clients in a relationship of trust and confidence. Tellingly, in their motion for summary judgment, Defendants do not cite a single case involving a malpractice claim against a

6

real estate appraiser; rather, they only cite to medical malpractice, accountant malpractice, and products liability cases. (*See* Defs. Mem. at 15-16.)

In *Allen Homes, Inc. v. Williams*, Index No. 2005/13624, 2006 WL 5110576 (N.Y. Sup. Ct. Monroe Cnty. Apr. 25, 2006), Williams moved for summary judgment on his third-party claim against Rynne Murphy & Associates, Inc., a real estate appraisal firm. *Id.* Rynne Murphy cross-moved for summary judgment. *Id.* The trial court stated that whether a real estate appraiser can be liable for professional malpractice is an open question in New York. *Id.* All, but one, of the cases cited by the court involved negligent appraisal or breach of duty causes of action without any allegations of a professional malpractice claim. *Id.* The exception was an unreported decision by a Nassau County judge discussed below. The Monroe County court declined to rule on the issue of whether real estate appraisers can be sued for malpractice. *Id.*

The *Allen Homes* court discussed an opinion of the Nassau County Supreme Court in *Early v. Rossback*, N.Y. L.J., Mar. 11, 2004, at 21 (col. 3) (N.Y. Sup. Ct. Nassau Cnty. Mar. 1, 2004) (copy attached). The events surrounding that case raise serious questions about its reliability as an accurate statement of New York law. The case was filed in April 1997 and dismissed as untimely under the newly amended CPLR 214(6). *Brothers v. Florence*, 95 N.Y.2d 290, 298, 739 N.E.2d 733, 736, 716 N.Y.S.2d 367, 370 (2000). The dismissal was appealed and eventually ended up in the Court of Appeals consolidated with three other actions involving the legal question of how to apply the new shortened limitations period of CPLR 214(6). *Id.* The Court of Appeals decided the legal issues before it without ever deciding whether a malpractice claim against a real estate appraiser exists under New York law. *See Chase Scientific*, 96 N.Y.2d at 27, 749 N.E.2d at 165, 725 N.Y.S.2d at 596 (noting that in *Brothers* "no one disputed that a real estate appraiser was capable of malpractice within the meaning of 214(6), and we resolved

7

the appeal without reaching that question."). On remand, some three years after the *Chase Scientific* opinion, none of the parties disputed the issue. The Nassau County court noted:

> this court has found no precedent involving a claim of malpractice by a real estate appraiser. For this reason, the court has borrowed the standard prerequisites for a malpractice action against a professional generally, and has adapted these prerequisites in its consideration of the instant motion.

*Early*, N.Y. L.J., Mar. 11, 2004, at 21. The opinions of the Court of Appeals and the Nassau County trial court in the *Early* case make plain that no judge in that case was asked to consider and decide if such a claim exists under New York law.[3]

Real estate appraisers cannot be sued for professional malpractice in New York. As a matter of law, Defendants have not met their burden on their motion for summary judgment because the motion is based on a flawed legal premise and attacks a legal theory that the Plan Administrator cannot (and does not) pursue.

### IV. The Examiner's Reports Should Not Be Considered In Determining Defendants' Motion For Summary Judgment.

Defendants' reliance on the Examiner's March Report is misplaced. First, the Examiner was not appointed to opine on the value of the Leasehold Estate. (McCarthy Decl., Exs. 1-2.) In the Examiner's May Report, he reports that he "*was told* that the New York lease, which was assigned to Baker as part of the sale of the New York practice, was previously appraised at $18 million." (McCarthy Decl., Ex. 3 at 30) (emphasis added.) Additionally, the Examiner merely concluded that "evaluations *appear* to have been within the then prevailing market range[.]" (Defs. Ex. E at 37 (emphasis added).) The Examiner, who has no documented experience in real estate appraisals, and without providing any methodology or analysis, accepted the value given

---

[3] The *Early* decision is also distinguishable on the ground that it involved New York State licensed appraisers and neither Mr. Houck nor Mr. Sanders is licensed as a real estate appraiser.

8

to him, compared it to some unidentified "independent market data," to reach his conclusion. Also, the portions cited by Defendants are not relevant, contain hearsay, and would also be excluded under Rule 403. Thus, any of the reports of the Examiner would not be admissible or usable at trial to prove that the Weiser Report is accurate, and thus, should not be considered for purposes of this motion for summary judgment. *See Azrielli*, 21 F.3d at 517.

## CONCLUSION

The Plan Administrator has not made any allegations of professional malpractice because a real estate appraiser cannot be sued for professional malpractice in New York. Defendants, attempting to confuse issues, have moved against a claim that was not pleaded. Additionally, as demonstrated in the Local Rule 56.1 statements, genuine issues of material fact exist. Accordingly, the Plan Administrator respectfully requests that Defendants' motion for summary judgment be denied.

Dated: New York, New York
      April 25, 2011

SMITH, GAMBRELL & RUSSELL, LLP

By: _____
      John G. McCarthy

*Attorneys for Plaintiff*
Development Specialists, Inc., as Plan
Administrator for Coudert Brothers LLP
250 Park Avenue, Suite 1900
New York, New York 10177
Tel: (212) 907-9700
Fax: (212) 907-9800
Jmccarthy@sgrlaw.com

Of Counsel:
J. Joseph Bainton
Stacy E. Yeung

# APPENDIX

3/11/2004 N.Y.L.J. 21, (col. 3)

New York Law Journal
Volume 231
Copyright 2004 ALM Properties, Inc. All rights reserved

Thursday, March 11, 2004

DOI

DECISION OF INTEREST

Nassau County Supreme Court

Appraiser Engaged in Malpractice by Failing To Re-Measure, Re-Inspect Appraised Property

Justice Skelos
Early v. Rossback - Motion by plaintiffs for summary judgment is granted on the issue of defendant Rossback's malpractice. This action is hereby referred to the calendar control part for a trial on the issues of causation and damages.

In this action plaintiffs allege malpractice in connection with real estate appraisals prepared by defendants for property located at 54 Cherry Lane, Floral Park, New York. The record shows that real estate appraisals were prepared by defendant Rossback on the following dates: February 28, 1990, listing a fair market value of $700,000.00; January 22, 1991 listing a fair market value of $554,000.00; June 3, 1993 listing a market value of $530,000; and January 19, 1994 indicating no change since June of 1993. Indeed the last appraisal consisted of a one-line letter wherein defendant Rossback advised plaintiff Early that "the value of the above mentioned property has not changed since I did the appraisal in June of 1993." Plaintiff Lakemed Realty Corporation ('Lakemed') was a tenant at the premises, when it purchased the property for $600,000.00 on April 23, 1991. It appears that plaintiff Early is a vice-president of Lakemed. This action was commenced on April 2, 1997.

In their complaint, plaintiffs seek damages alleging that they are now in the position of selling the subject property at a price far below the value established by the defendants. Plaintiffs further seek compensation for the cost of new appraisals, the excess interest paid for financing costs of the mortgage used in plaintiffs' purchase of the subject property and excess real estate taxes paid.

On prior motions by all defendants for summary judgment dismissing the complaint as timebarred, the trial court denied the motion. On appeal (262 AD2d 601), the Appellate Division reversed and dismissed the complaint. On further appeal (95 NY2d 290), the Court of Appeals reversed the decision by the Appellate Division and reinstated the complaint against the Rossback defendants on the grounds that the action against them was commenced "with reasonable diligence" for the purposes of a one-year bright line grace period for the application of the newly-amended CPLR 214(6). The Court of Appeals expressly noted that the plaintiffs' claim accrued on January 19, 1994, the date of the last appraisal.

Plaintiffs now move for summary judgment. Their first hurdle is to establish "good cause" pursuant to CPLR

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

3212(a) for their failure to make this motion within 120 days after the note of issue was filed on October 3, 2002. The instant motion was made on September 8, 2003, a little more than 5 months after the note of issue was filed. Plaintiffs' attorney alleges that the delay was caused, inter alia, by defendants' "bad faith settlement negotiations" and a disabling injury to his back. There is some evidence in the record documenting the parties' attempt at settlement. There is no evidence in the record to demonstrate that the delay herein is the kind of dilatory tactic or disruptive practice that CPLR 3212(a) was enacted to prevent (see Gonzalez v. 98 Mag Leasing, 95 NY2d 124, 128). Given the wide latitude with which the court may consider a late motion where, as here, the opposing party does not allege or demonstrate prejudice (Williams v. Nicolaou, 284 AD2d 451), the court concludes that plaintiffs have established the requisite "good cause."

Turning to the substance of plaintiffs' complaint and the instant motion, this court has found no precedent involving a claim of malpractice by a real estate appraiser. For this reason, the court has borrowed the standard prerequisites for a malpractice action against a professional generally, and has adapted these prerequisites in its consideration of the instant motion. To recover damages for malpractice, it must be established that the defendant failed to exercise that degree of care, skill and diligence commonly possessed and exercised by members of his or her professional community, and that this failure was the proximate cause of injury or damage sustained by the plaintiff [see Attonito v. La Mirage of Southhampton, Inc., 276 AD2d 454 (legal malpractice); see also Biggs v. Mary Immaculate Hospital, 303 AD2d 702 (medical malpractice); Vona v. Wank, 302 AD2d 516 (dental malpractice); Estate of Michael J. Burke v. Peter J. Repetti & Co., 255 AD2d 483 (accounting malpractice)].

In their attempt to present a prima facie case for summary judgment, plaintiffs submit two forms of proof as evidence of defendant Rossback's malpractice. First, plaintiffs rely on their expert, James Taylor, who describes defendant Rossback's "miscalculation/mismeasurement of the building which is 5,260 square feet NOT 6875 square feet RESULTING IN AN OVERVALUATION OF THE PROPERTY OF AT LEAST 25 percent." Mr. Taylor incorporates his report into his affidavit. In the report he further asserts that the 1994 appraisal letter was deficient because land value conclusions were not supported by any sales information contained within the body of the appraisal. The report concludes with the expert's opinion that the 1994 letter update "is totally deficient and unsupported. Since the appraiser is a New York State licensed appraiser this report must conform to the reporting requirements as set forth under the Uniform Standards of Professional Appraisal Practice. This report does not meet any of those standards in terms of form or content."

At his examination before trial, defendant Rossback testified that the National Association of Appraisers recommends that an appraiser use a client's sketches to establish the size of the premises. The appraiser should also remeasure the premises. It was his recollection that he did not remeasure the subject premises before giving his first appraisal. Rossback further testified that he copied the measurements of the 1990 appraisal, when rendering the 1993 appraisal, upon which the 1994 appraisal was based. Rossback admitted that he did not consult building records maintained by the town, he did not obtain a Nassau County Property Description Card and he did not obtain a survey. He measured only the first floor, but not the second floor, for the first appraisal. He never remeasured the premises following the first appraisal, and he never re-inspected the premises for the third and fourth appraisals.

Rossback's admissions and the expert's report suffice to establish a prima facie case that Rossback's conduct in providing the fourth appraisal departed from good and accepted standard practice for real estate appraisers. The plaintiff having established prima facie, the defendant's negligence, the burden shifted to the defendant to raise a material issue of fact in order to defeat summary judgment (Alvarez v. Prospect Hosp., 68 NY2d 320, 324). In

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

opposition defendant's attorney uses conclusory language to disparage plaintiff's expert affidavit but never specifically addresses Taylor's report incorporated therein. Rossback himself argues, in conclusory fashion, that any miscalculation on his part did not constitute professional negligence. Conclusory and unsupported allegations are insufficient to defeat summary judgment (Alvarez v. Prospect Hosp., 68 NY2d at 325). On this record the court grants plaintiffs summary judgment on the issue of Rossback's malpractice.

Under these circumstances there is no need to consider plaintiffs' allegations of res ipsa loquitur, which permit but do not require an inference of negligence (Kambat v. St. Francis Hosp., 89 NY2d 489). In any event the doctrine of res ipsa loquitur is unavailable where, as here, negligence can be shown without inordinate difficulty ( Pipe Welding Supply Company Inc., v. Haskell Conner & Frost, 96 AD2d 29).

However, plaintiffs have failed to make a prima facie case of entitlement to summary judgment on the issues of proximate cause and damages. They fail to address the argument raised by the defendants that the decision to purchase the subject premises was not only a financial one, but was also founded upon the satisfaction of a business need based on location. Plaintiffs' damages analysis goes back to the purchase of the property in 1991, notwithstanding the Court of Appeals determination that plaintiffs' claim accrued as January 19, 1994. Damages, if any, accrue from the later date forward.

As to the issue of the accrual date, the continuous representation doctrine is not applicable here. A toll of the limitations period under the continuous representation doctrine is available "only where there is a mutual understanding of the need for further representation on the specific subject matter underlying the malpractice claim" ( McCoy v. Feinman, 99 NY2d 295, 306). Where, as here, no further representation was contemplated at the time of the earlier appraisals, the limitations period was never tolled (id.). Under these circumstances, the court holds that plaintiffs may not recover for any damages incurred prior to the accrual date of January 19, 1994.

One final objection by defendants that may be dealt with summarily is defendants' claim that Lakemed lacks privity with them. Defendants argue that the appraisals were prepared for plaintiff Early, while the property was purchased by plaintiff Lakemed. In the context of a tort case, the law requires actual privity between the parties or a relationship so close as to approach that of privity (Prudential Ins Co v. Dewey, 80 NY2d 377, 382; Ossining Union Free School Dist. v. Anderson LaRocca Anderson, 73 NY2d 417, 424). Where an appraiser knows that a specific third party will be relying on its appraisal, tort liability will ensue if the appraisal is negligently prepared and relied on by the third party to its detriment (Rodin Properties-Shore Mall NV v. Ullman, 264 AD2d 367). As defendant Rossback, in his affidavit in opposition, describes in detail the background to the Lakemed purchase of the subject premises, it is clear that Rossback knew that the party for whom the appraisals were being prepared was Lakemed, and that Early was acting on behalf of Lakemed in ordering the appraisals. Accordingly the lack of privity defense is rejected.

Based on the foregoing, plaintiffs' motion for summary judgment is granted on the issue of defendants' malpractice and denied on the issues of proximate cause and damages from the accrual date of January 19, 1994. This case shall proceed to trial forthwith subject to the discretion of the justice presiding in the calendar control part.

This constitutes the decision and order of the court.

3/11/2004 NYLJ 21, (col. 3)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.